(navigation bar)

**Query**   **Reports**   **Utilities**   **Help**   **What's New**   **Log Out**

```
┌─────────────────────────────┐
│           FILED             │
│  CLERK, U.S. DISTRICT COURT │
│  ┌───────────────────────┐  │
│  │     7/27/2021         │  │
│  └───────────────────────┘  │
│ CENTRAL DISTRICT OF CALIFORNIA │
│ BY: ___jb___      DEPUTY    │
└─────────────────────────────┘
```

## U.S. District Court
## Eastern District of New York (Brooklyn)
## CRIMINAL DOCKET FOR CASE #: 1:21-mj-00849-PK All Defendants

2:21-cr-00203-ODW-4

Case title: USA v. Anifowoshe et al

Date Filed: 07/22/2021

Date Terminated: 07/22/2021

---

Assigned to: Magistrate Judge Peggy Kuo

**Defendant (1)**

**Yusuf Adekinka Anifowoshe**
*TERMINATED: 07/22/2021*

| **Pending Counts** | **Disposition** |
|---|---|
| None | |

| **Highest Offense Level (Opening)** | |
|---|---|
| None | |

| **Terminated Counts** | **Disposition** |
|---|---|
| None | |

| **Highest Offense Level (Terminated)** | |
|---|---|
| None | |

| **Complaints** | **Disposition** |
|---|---|
| 18:1349.F, 18:1956-9999.F, 18:1028A.F | |

---

Assigned to: Magistrate Judge Peggy Kuo

**Defendant (2)**
**Rukayat Motunraya Fashola**
*TERMINATED: 07/22/2021*

| **Pending Counts** | **Disposition** |
|---|---|
| None | |

| **Highest Offense Level (Opening)** | |
|---|---|
| None | |

| Complaints | Disposition |
|---|---|
| 18:1349.F, 18:1956-9999.F, 18:1028A.F | |

**Plaintiff**

**USA**                                    represented by    **Ellen Hanley Sise**
DOJ-USAO
U.S. Attorney's Office, Eastern Distric
York
271 Cadman Plaza East
Brooklyn, NY 11201
718-254-6166
Email: ellen.sise@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Government Attorney*

| Date Filed | # | Docket Text |
|---|---|---|
| 07/22/2021 | 1 | RULE 5 AFFIDAVIT by USA as to Yusuf Adekinka Anifowoshe, Rukayat Motunraya Fashola (Hu (Main Document 1 replaced on 7/27/2021) (Hugh, Lewis). (Entered: 07/27/2021) |
| 07/22/2021 | | Arrest (Rule 5) of Yusuf Adekinka Anifowoshe, Rukayat Motunraya Fashola (Hugh, Lewis) (Enter 07/27/2021) |
| 07/22/2021 | 2 | ORDER Setting Conditions of Release as to Yusuf Adekinka Anifowoshe (1) $300,000. Ordered by Judge Peggy Kuo on 7/22/2021. (Hugh, Lewis) (Entered: 07/27/2021) |
| 07/22/2021 | | Minute Entry For proceedings held on 7/22/2021 before Magistrate Judge Peggy Kuo: Arraignmen Rukayat M. Fashola held. AUSA Ellen Sise for the Government; Retained counsel Bradley Simon Defendant. Pretrial officer Bianca Carter also present, all parties appeared via video/teleconference proceeding to the Central District of California held. Defendant moves for bail; Government oppos grants application. Defendant is released on a $150,000 bond. Two sureties appeared by telephone, advised of bond obligations and gave consent to the Court to sign on their behalf. Defendant also a bond obligations and gave consent to the Court to sign on her behalf. Defendant released. (FTR Lo 4:39-5:10.) (Hugh, Lewis) (Entered: 07/27/2021) |
| 07/22/2021 | 3 | ORDER Setting Conditions of Release as to Rukayat Motunraya Fashola (2) $150,000. Ordered by Judge Peggy Kuo on 7/22/2021. (Hugh, Lewis) (Entered: 07/27/2021) |
| 07/22/2021 | 4 | Notice to US District Court For The Central District of California of a Rule 5 or Rule 32 Initial Ap to Yusuf Adekinka Anifowoshe, Rukayat Motunraya Fashola. Your case number is: 21CR203(RGK sheet and documents attached. (If you require certified copies of any documents, please send a requ [InterDistrictTransfer_NYED@nyed.uscourts.gov]. If you wish to designate a different email addre transfers, send your request to InterDistrictTransfer_TXND@txd.uscourts.gov.) (Hugh, Lewis) (E 07/27/2021) |
| 07/27/2021 | | Minute Entry For proceedings held on 7/22/2021 before Magistrate Judge Peggy Kuo: Arraignmen Anifowoshe held. AUSA Ellen Sise for the Government; Retained counsel Aaron Wallenstein for D Pretrial officer Christian Berzal also present. All parties appeared via video/teleconference. Remov proceeding to the Central District of California held. Defendant moves for bail; Government oppos grants application. Defendant is released on a $300,000 bond. One surety appeared by telephone, w advised of bond obligations and gave consent to the Court to sign on her behalf. Defendant also adv obligations and gave consent to the Court to sign on his behalf. Confession of judgment on propert |

AB:EHS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

        - against -

YUSUF ADEKINKA ANIFOWOSHE,
       also known as "AJ,"
       also known as "Alvin Johnson,"
and

RUKAYAT MOTUNRAYA FASHOLA,
       also known as "Morayo,"

            Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

<u>C O M P L A I N T</u>

(Fed. R. Crim. P. 5)

Case No. 21 mj 849

EASTERN DISTRICT OF NEW YORK, SS:

       Andrew Innocenti, being duly sworn, deposes and states that he is a Special Agent with the Federal Bureau of Investigation, duly appointed according to law and acting as such.

       On or about April 29, 2021, the United States District Court for the Central District of California issued arrest warrants commanding the arrest of defendant YUSUF ADEKINKA ANIFOWOSHE, also known as "AJ," also known as "Alvin Johnson, " and RUKAYAT MOTUNRAYA FASHOLA, also known as "Morayo," for violations of Title 18, United States Code, Sections 1349 (conspiracy to commit wire fraud); 1956(h) (conspiracy to engage in money laundering); and 1028A(a)(1) (aggravated identity theft). A true and correct copy of the indictment and arrest warrants are attached hereto as Exhibit A.

The source of your deponent's information and the grounds for his belief are as follows:[1]

1.      On or about April 29, 2021, the United States District Court for the Central District of California issued arrest warrants commanding the arrest of defendant YUSUF ADEKINKA ANIFOWOSHE, also known as "AJ," also known as "Alvin Johnson, " and RUKAYAT MOTUNRAYA FASHOLA, also known as "Morayo," for violations of Title 18, United States Code, Sections 1349 (conspiracy to commit wire fraud); 1956(h) (conspiracy to engage in money laundering); and 1028A(a)(1) (aggravated identity theft).

2.      Based on surveillance, I obtained an address for ANIFOWOSHE of 2885 West 15th Street, #6C, Brooklyn, New York.

3.      Based on surveillance, I obtained an address for FASHOLA of 48 Irving Street, Valley Stream, New York.

4.      On July 22, 2021, law enforcement agents went to 2885 West 15th Street, #6C, Brooklyn, New York.   Upon execution of a search warrant at that address, a male came to the door.   Law enforcement agents recognized the male as ANIFOWOSHE based on law enforcement agents' comparison of the male to a known photo of ANIFOWOSHE.

5.      Law enforcement agents identified themselves to ANIFOWOSHE and asked for his name.   ANIFOWOSHE confirmed that he was ANIFOWOSHE.   Law enforcement agents obtained ANIFOWOSHE's passport.   The name and photograph of ANIFOWOSHE on the passport matched the ANIFOWOSHE for whose arrest warrant was

---

[1]      Because the purpose of this affidavit is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

## United States District Court, Eastern District of New York

UNITED STATES OF AMERICA

**V.**

Yusuf Anifowoshe _____ , Defendant.

### ORDER SETTING CONDITIONS OF RELEASE AND APPEARANCE BOND

Case Number: 21mj849

### RELEASE ORDER

It is hereby ORDERED that the above-named defendant be released subject to the Standard Conditions of Release on the reverse and as follows:

☐ Upon **Personal Recognizance Bond** on his/her promise to appear at all scheduled proceedings as required, or

☑ Upon **Bond** executed by the defendant in the amount of $ 300,000.00 ____ , and secured by ☑ financially responsible sureties listed below and/or ☑ collateral set forth below.

### Additional Conditions of Release

The Court finding that release under the Standard Conditions of Release on the reverse will not by themselves reasonably assure the appearance of the defendant and/or the safety of other persons and the community, IT IS FURTHER ORDERED as follows:

☑ 1. The defendant must remain in and may not leave the following areas without Court permission: ☑ New York City; ☑ Long Island, NY; ☐ New York State; ☐ New Jersey; ☑ CDCA for court & points btwn and travel to and from this Court and the permitted areas.

☐ 2. The defendant must avoid all contact with the following persons or entities: co-defendants and co-conspirators except in presence of counsel; victims, witnesses and potential witnesses .

☐ 3. The defendant must avoid and not go to any of the following locations: _____

☑ 4. The defendant must surrender all passports to Pretrial Services by XXX and not obtain other passports or international travel documents.

☑ 5. The defendant is placed under the supervision of the Pretrial Services Agency subject to the Special Conditions on the reverse and:

  ☑ a. is subject to random visits by a Pretrial Services officer at defendant's residence and/or place of work;

  ☑ b. must report ☐ as directed by Pretrial Services or ☐ in person _____ times per _____ and/or ☐ by telephone _____ times per _____ .

  ☑ c. must undergo ☑ testing, ☑ evaluation and/or ☑ treatment for substance abuse, including alcoholism, as directed by Pretrial Services.

  ☐ d. must undergo evaluation and treatment for mental health problems, as directed by Pretrial Services.

  ☑ e. is subject to the following location restriction program with location monitoring, as directed by Pretrial Services:

    ☐ home incarceration: restricted to home at all times, except for attorney visits, court appearances and necessary medical treatment;

    ☐ home detention: restricted to home at all times, except for attorney visits, court appearances, medical treatment, ☐ religious services, ☐ employment, ☐ school or training, ☐ other activities approved by Pretrial Services, ☐ _____

    ☑ curfew: restricted to home every day from _____ to _____ , or ☑ as directed by Pretrial Services.

  ☐ Defendant must pay all or part of the cost of any required testing, evaluation, treatment and/or location monitoring with personal funds, based upon ability to pay as determined by the Court and the Pretrial Services Agency, and/ or from available insurance.

☑ 6. Other Conditions: no new lines of credit or bank accounts except with PTS permission; seek and maintain employment

### APPEARANCE BOND

I, the undersigned defendant, and each surety who signs this bond, acknowledge that I have read this Appearance Bond and, and have either read all the other conditions of release or have had those conditions explained. I further acknowledge that I and my personal representatives, jointly and severally, are bound to pay the United States of America the sum of $ 300,000.00 and that this obligation is secured with the below interest in the following property ("Collateral") which I represent is/are free and clear of liens except as otherwise indicated:

☐ cash deposited in the Registry of the Court in the sum of $ _____ ;

☑ premises located at: 2480 Bringham St. Brooklyn, NY owned by Tina Anifowoshe _____

☑ I also agree to execute a confession of judgment, mortgage or lien in form approved by the U.S. Attorney which shall be duly filed with the proper local and state authorities on or before 8/5/2021 _____

Each owner of the above Collateral agrees not to sell the property, allow further claims or encumbrances to be made against it, or do anything to reduce its value while this Appearance Bond is in effect.

*Forfeiture of the Bond.* This Appearance Bond may be forfeited if the defendant fails to comply with any of the conditions set forth above and on the reverse. The defendant and any surety who has signed this form also agree that the court may immediately order the amount of the bond surrendered to the United States, including any security for the bond, if the defendant fails to comply with the above agreement. The court may also order a judgment of forfeiture against the defendant and against each surety for the entire amount of the bond, including any interest and costs.

| | | Date |
|---|---|---|
| Tina Anifowoshe | Address: 2480 Bringham Street Brooklyn, NY 11224 | 7/22/2021 |
| /S/ by MJ Kuo on consent , Surety | | |
| | Address: | |
| , Surety | | |
| | Address: | |
| , Surety | | |

I acknowledge that I am the defendant in this case and that I am aware of the conditions of release and of the penalties and sanctions set forth on the front and reverse sides of this form.

/s/ Yusuf Anifowoshe (by MJ Kuo by consent)

Signature of Defendant

Release of the Defendant is hereby ordered on July 22 20 21 .

_____ , US MJ

## STANDARD CONDITIONS OF RELEASE

IT IS ORDERED that the defendant's release is subject to these conditions:

(1) The defendant must not violate any federal, state or local law while on release.

(2) The defendant must cooperate in the collection of a DNA sample if the collection is authorized by 42 U.S.C. § 14135a.

(3) The defendant must advise the Court, the Pretrial Services office, defense Counsel and the U.S. Attorney in writing before making any change in address or telephone number.

(4) The defendant must appear in court as required and must surrender for service of any sentence imposed as directed.

(5) The defendant must refrain from use or unlawful possession of a narcotic drug or other controlled substances as defined in 21 U.S.C. § 802, unless prescribed by a licensed medical practitioner.

(6) If the defendant fails to report as required to the Pretrial Services Agency, defendant may be subject to such random visits at his/her residence or work by a Pretrial Services Officer as may be necessary to verify his/her residence or place of employment in order to secure compliance with the order of release.

(7) The defendant must not possess a firearm, destructive device, or other weapon.

## SPECIAL CONDITIONS OF RELEASE FOR TESTING, TREATMENT OR EVALUATION AND FOR LOCATION MONITORING

1. If the defendant fails to appear for any specified treatment or evaluation, defendant may be subject to such random visits at his/her residence or work by a Pretrial Services Officer as may be necessary to verify his/her residence or place of employment in order to secure compliance with the order of release.

2. The defendant must not obstruct, attempt to obstruct, or tamper with the efficiency and accuracy of prohibited substance screening or testing. Testing may be used with random frequency and may include urine testing, the wearing of a sweat patch, a remote alcohol testing system, and/or any form of prohibited substance screening or testing, as determined by Pretrial Services.

3. If defendant is subject to a location restriction program or location monitoring, defendant must:
   (a) stay at his/her residence at all times except for approved activities and may not leave for approved activities without providing prior notice to Pretrial Services, except in cases of medical emergencies.
   (b) abide by all program requirements and instructions provided by Pretrial Services relating to the operation of monitoring technology. Unless specifically ordered by the court, Pretrial Services may require use of one of the following or comparable monitoring technology: Radio Frequency (RF) monitoring; Passive Global Positioning Satellite (GPS) monitoring; Active Global Positioning Satellite (GPS) monitoring (including "hybrid" (Active/Passive) GPS); Voice Recognition monitoring.

## FORFEITURE OF THE BOND

This appearance bond may be forfeited if the defendant does not comply with the conditions of release set forth in this Order Setting Conditions of Release and Bond. The court may immediately order the amount of the bond and any Collateral surrendered to the United States if the defendant does not comply with the agreement. At the request of the United States, the court may order a judgment of forfeiture against the defendant and each surety for the entire amount of the bond, including interest and costs.

## RELEASE OF THE BOND

This appearance bond may be terminated at any time by the Court. This bond will be satisfied and the security will be released when either: (1) the defendant is found not guilty on all charges, or (2) the defendant reports to serve a sentence.

## ADVICE OF PENALTIES AND SANCTIONS TO THE DEFENDANT

Defendant is advised that violating any of the foregoing conditions of release may result in the immediate issuance of a warrant of arrest, a revocation of the order of release, an order of detention, a forfeiture of any bond, and a prosecution for contempt of court and could result in imprisonment, a fine, or both.

While on release, if defendant commits a federal felony offense the punishment is an additional prison term of not more than ten years and for a federal misdemeanor offense the punishment is an additional prison term of not more than one year. This sentence will be consecutive (*i.e.*, in addition to) to any other sentence defendant may receive.

It is a crime punishable by up to ten years in prison, and a $250,000 fine, or both, to: obstruct a criminal investigation; tamper with a witness, victim, or informant; retaliate or attempt to retaliate against a witness, victim, or informant; or intimidate or attempt to intimidate a witness, victim, juror, informant, or officer of the court. The penalties for tampering, retaliation, or intimidation are significantly more serious if they involve a killing or attempted killing.

If, after release, defendant knowingly fails to appear as the conditions of release require, or to surrender to serve a sentence, defendant may be prosecuted for failing to appear or surrender and additional punishment may be imposed, whether or not the defendant is convicted of the pending charges. If defendant is convicted of:

(1) an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more – defendant will be fined not more than $250,000 or imprisoned for not more than 10 years, or both;

(2) an offense punishable by imprisonment for a term of five years or more, but less than fifteen years – defendant will be fined not more than $250,000 or imprisoned for not more than five years, or both;

(3) any other felony – defendant will be fined not more than $250,000 or imprisoned not more than two years, or both;

(4) a misdemeanor – defendant will be fined not more than $100,000 or imprisoned not more than one year, or both.

A term of imprisonment imposed for failure to appear or surrender will be consecutive to any other sentence imposed. In addition, a failure to appear or surrender may result in the forfeiture of any bond posted.

Distribution: Canary - Court    Pink - Pretrial Services    Goldenrod - Defendant

issued on April 29, 2021 in the Central District of California based on law enforcement databases.

6.      The appearance of the individual who identified himself as ANIFOWOSHE matches the appearance known to law enforcement for ANIFOWOSHE wanted in the Central District of California.

7.      Based on the foregoing, I submit that there is probable cause to believe that the defendant ANIFOWOSHE is the defendant ANIFOWOSHE who is wanted in the Central District of California.

8.      On July 22, 2021, I went to 48 Irving Street, Valley Stream, New York. FASHOLA's family members answered the door.   Law enforcement agents asked whether FASHOLA was in the residence.   A family member said yes.   We entered the house and went upstairs, where we were informed FASHOLA was located.   I recognized the female upstairs as FASHOLA based on my comparison of the female to a known photo of FASHOLA.

9.      Law enforcement agents identified themselves to FASHOLA. FASHOLA identified herself as FASHOLA.   In a custodial interview, I asked FASHOLA for name and her date of birth and FASHOLA provided her name and date of birth, which matched the date of birth for the FASHOLA whose arrest warrant was issued on April 29, 2021 in the Central District of California.   Based on law enforcement records, I know this to be FASHOLA's date of birth.

10.     The appearance of the individual who identified herself as FASHOLA matches the appearance known to law enforcement for the FASHOLA wanted in the Central District of California.

11.     Based on the foregoing, I submit that there is probable cause to believe that the defendant FASHOLA is the defendant FASHOLA who is wanted in the Central District of California.

WHEREFORE, your deponent respectfully requests that the defendants ANIFOWOSHE and FASHOLA be removed to the Central District of California so that they may be dealt with according to law.

_____

Andrew Innocenti
Special Agent, Federal Bureau of Investigation

Sworn to before me by reliable electronic means this
22nd day of July, 2021

_____/s/ USMJ Peggy Kuo_____
THE HONORABLE PEGGY KUO
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

EXHIBIT A

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FILED**
CLERK, U.S. DISTRICT COURT

4/29/2021

CENTRAL DISTRICT OF CALIFORNIA
BY: JB DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

April 2021 Grand Jury

UNITED STATES OF AMERICA,

        Plaintiff,

        v.

ABDULRAHMAN IMRAAN JUMA,
  aka "Abdul,"
  aka "Rahman,"
KELLY CHIBUZO VINCENT,
  aka "Vincent Kelly Chibuzo,"
ABBA ALHAJI KYARI,
RUKAYAT MOTUNRAYA FASHOLA,
  aka "Morayo,"
BOLATITO TAWAKALITU AGBABIAKA,
  aka "Bolamide,"
YUSUF ADEKINKA ANIFOWOSHE,
  aka "AJ,"
  aka "Alvin Johnson,"

        Defendants.

CR    2:21-cr-00203-RGK

I N D I C T M E N T

[18 U.S.C. § 1349: Conspiracy to
Commit Wire Fraud; 18 U.S.C.
§ 1956(h): Conspiracy to Engage in
Money Laundering; 18 U.S.C.
§ 1028A(a)(1): Aggravated Identity
Theft; 18 U.S.C. § 2(a): Aiding
and Abetting; 18 U.S.C. §§ 981,
982, and 1028 and 28 U.S.C.
§ 2461(c): Criminal Forfeiture]

The Grand Jury charges:

INTRODUCTORY ALLEGATIONS

At times relevant to this Indictment:

A.  __Defendants__

    1.    Defendant ABDULRAHMAN IMRAAN JUMA, also known as ("aka") "Abdul," aka "Rahman" ("JUMA"), was a resident of the Republic of Kenya ("Kenya").

    2.    Defendant KELLY CHIBUZO VINCENT, aka "Vincent Kelly Chibuzo" ("VINCENT"), and defendant ABBA ALHAJI KYARI ("KYARI") were residents of the Federal Republic of Nigeria ("Nigeria").

    3.    Defendant RUKAYAT MOTUNRAYA FASHOLA, aka "Morayo" ("FASHOLA"), defendant BOLATITO TAWAKALITU AGBABIAKA, aka "Bolamide" ("AGBABIAKA"), and defendant YUSUF ADEKINKA ANIFOWOSHE, aka "AJ," aka "Alvin Johnson" ("ANIFOWOSHE"), were residents of New York State.

B.  __Victim__

    4.    The "Victim Businessperson" resided in the State of Qatar ("Qatar").

    5.    The "Qatari Victim Company" was a company founded by the Victim Businessperson to build an international school for children in Qatar.

C.  __Bank Accounts__

    6.    The "Capital One Account" was a bank account of defendant AGBABIAKA, with an account number ending in 2389, at Capital One Bank USA, NA, held in Staten Island, New York.

    7.    The "Kenyan Bank Account" was the bank account of a law firm at the Co-operative Bank of Kenya, in Kenya.

    8.    The "Qatari Bank Account" was a bank account of the Qatari Victim Company at Qatar National Bank ("QNB"), in Qatar.

    9.    "TD Bank Account 1" was a bank account of defendant AGBABIAKA, with an account number ending in 1471, at TD Bank, NA ("TD Bank"), held in Staten Island, New York.

10.  "TD Bank Account 2" was a bank account of an unindicted coconspirator, with an account number ending in 0789, at TD Bank, held in Brooklyn, New York.

11.  The "Wells Fargo Account 1" was a bank account of an unindicted coconspirator, with an account number ending in 5320, at Wells Fargo Bank, NA ("Wells Fargo"), held in Canoga Park, California.

12.  "Wells Fargo Account 2" was a bank account, with an account number ending in 6742, at Wells Fargo, held in Tallahassee, Florida.

COUNT ONE

[18 U.S.C. § 1349]

13.   The Grand Jury re-alleges and incorporates here paragraphs 1 through 12 of the Introductory Allegations of this Indictment.

A.   OBJECT OF THE CONSPIRACY

14.   Beginning no later than on or about November 11, 2019, and continuing until on or about April 26, 2020, in Los Angeles County, within the Central District of California, and elsewhere, defendants ABDULRAHMAN IMRAAN JUMA, also known as ("aka") "Abdul," aka "Rahman" ("JUMA"), KELLY CHIBUZO VINCENT, aka "Vincent Kelly Chibuzo" ("VINCENT"), ABBA ALHAJI KYARI ("KYARI"), RUKAYAT MOTUNRAYA FASHOLA, aka "Morayo" ("FASHOLA"), BOLATITO TAWAKALITU AGBABIAKA, aka "Bolamide" ("AGBABIAKA"), and YUSUF ADEKINKA ANIFOWOSHE, aka "AJ," aka "Alvin Johnson" ("ANIFOWOSHE"), and unindicted coconspirator #1 ("UICC 1"), unindicted coconspirator Ramon Olorunwa Abbas ("UICC Abbas"), unindicted coconspirator #3 ("UICC 3"), unindicted coconspirator #4 ("UICC 4"), unindicted coconspirator #5 ("UICC 5"), and unindicted coconspirator #6 ("UICC 6"), together with others known and unknown to the Grand Jury, knowingly conspired to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

B.   MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE ACCOMPLISHED

15.   The object of the conspiracy was to be accomplished, in substance, as follows:

a.   UICC 1 would refer a victim to defendant JUMA, who would, in turn, falsely claim that he would provide a loan sought by the victim, through a company defendant JUMA owned in Kenya.

4

b.   Defendant JUMA would meet with the victim and falsely promise to provide the loan to the victim in exchange for a consultancy fee paid by wire transfer to a bank account in Kenya.

c.   After the victim paid the consultancy fee and other fees requested by defendant JUMA, defendant JUMA would provide the victim with forged and fraudulent paperwork that would make it appear that the loan had been paid to the victim's bank account.

d.   Defendant JUMA would then instruct the victim that additional payments, to be paid by wire transfer to a bank account in Kenya, would be needed to secure the loan.

e.   In coordination with defendant JUMA, UICC Abbas would interact with the victim, fraudulently claiming to be a director of a U.S. bank that would assist in transferring the loan to the victim.

f.   Defendant JUMA and UICC Abbas would devise false stories and artifices -- some created by defendant VINCENT and other coconspirators -- to induce the victim to send additional payments to bank accounts in the United States and Kenya.

g.   UICC Abbas would arrange for coconspirators, including defendant ANIFOWOSHE and UICC 3, to take steps to further the false stories and artifices, to trick the victim into paying additional funds.  These steps would include pretending to be an employee of a U.S. bank, filing a Fictitious Business Name Statement with the Los Angeles County Registrar-Recorder/County Clerk's Office, and opening a bank account in Los Angeles County.

h.   UICC Abbas would ask defendants FASHOLA and AGBABIAKA to identify bank accounts in the United States that could receive payments from the victim.

1        i.  Defendants FASHOLA and AGBABIAKA would negotiate with
2  coconspirators about the coconspirators' terms for use of their bank
3  accounts to receive funds from the victim.  When defendant FASHOLA or
4  defendant AGBABIAKA located a bank that could be used to receive
5  funds from the victim, they would send UICC Abbas a message or
6  messages (a) about the terms demanded by the accountholder, and (b)
7  containing information about the bank account, such as the name of
8  the accountholder, the bank account number, the routing number, and
9  the Society for Worldwide Interbank Financial Telecommunication
10 ("SWIFT") code.  At times, defendant AGBABIAKA would provide UICC
11 Abbas with information regarding her own bank account, which she
12 would provide to UICC Abbas to be used to receive funds from the
13 victim.

14       j.  After UICC Abbas had selected a bank account in the
15 United States to receive a fraudulent payment from the victim,
16 defendant JUMA and UICC Abbas would communicate the account
17 information to the victim, and defendant JUMA and UICC Abbas would,
18 through false or fraudulent pretenses, representations, and promises,
19 and concealment of material facts, cause the victim to deposit, wire,
20 or transfer funds into the bank account that had been identified.

21       k.  After the victim had wire transferred funds to a bank
22 account in the United States, UICC Abbas would arrange with
23 defendants FASHOLA and AGBABIAKA, and UICC 5 and UICC 6, to withdraw
24 the fraudulently obtained funds from the bank account through
25 (i) wire transfers and teller transfers to other accounts, (ii) the
26 issuance of cashier's checks, and (iii) cash withdrawals in order to
27 obtain the money and so as to conceal and disguise the nature,
28 location, source, ownership, and control of the proceeds.

1        l.    Defendants FASHOLA and AGBABIAKA, and UICC 4, would

2 also, at times, help UICC Abbas purchase items of value with funds

3 fraudulently obtained from the victim.  Defendants FASHOLA,

4 AGBABIAKA, and ANIFOWOSHE, with UICC 5, would, at times, assist UICC

5 Abbas in transporting those items of value to him in the United Arab

6 Emirates ("U.A.E.").

7        m.    At UICC Abbas's request, defendant AGBABIAKA would, at

8 times, deposit funds, or cause funds to be deposited, into the bank

9 account of an illicit and unlicensed money exchanger, who would then

10 transfer other funds from a Nigerian bank account that he or she

11 controlled to a Nigerian bank account of a coconspirator specified by

12 UICC Abbas, so that UICC Abbas could obtain the victim's funds.

13        n.    When a person, such as a former coconspirator, would

14 contact the victim directly without the approval of defendant JUMA

15 and UICC Abbas -- thereby jeopardizing the success of defendant

16 JUMA's and UICC Abbas' scheme -- UICC Abbas would arrange to have

17 defendant KYARI arrest the former coconspirator and hold the person

18 in jail.  UICC Abbas would arrange payment to defendant KYARI

19 (i) using a bank account of another person and (ii) making a transfer

20 to a bank account in Nigeria in the name of a person other than

21 defendant KYARI.

22 C.   OVERT ACTS

23    16.    In furtherance of the conspiracy, and to accomplish its

24 objects, defendants JUMA, VINCENT, KYARI, FASHOLA, AGBABIAKA, and

25 ANIFOWOSHE, and UICC 1, UICC Abbas, UICC 3, UICC 4, UICC 5, and UICC

26 6, together with others known and unknown to the Grand Jury, on or

27 about the dates set forth below, committed and caused to be committed

28

various overt acts, in the Central District of California and elsewhere, including, but not limited to, the following:

Overt Act No. 1:    On an unknown date before November 11, 2019, UICC 1 referred the Victim Businessperson's financial advisor to defendant JUMA's company, Westload Financial Solutions Limited, purportedly to assist in arranging a loan to the Qatari Victim Company.

Overt Act No. 2:    On November 12, 2019, during an in-person meeting in Kenya, defendant JUMA falsely told the Victim Businessperson that defendant JUMA's company, Westload Financial Solutions Limited, would provide a $15 million loan to the Qatari Victim Company to aid the construction of an international school in Qatar in exchange for a consultancy fee and other legal fees.

Overt Act No. 3:    On November 13 and 14, 2019, using electronic messages, defendant JUMA fraudulently induced the Victim Businessperson to wire transfer approximately $164,450, in approximately four transactions, from the Qatari Bank Account to the Kenyan Bank Account.

Overt Act No. 4:    On December 1, 2019, through an electronic message, defendant JUMA sent the Victim Businessperson a forged and fraudulent wire transfer confirmation purporting to show that $15 million had been transferred from a bank account in the United Kingdom to the Qatari Bank Account.

Overt Act No. 5:    On December 5, 2019, after the Victim Businessperson learned that the Qatari Bank Account had not received the purported $15 million wire transfer, defendant JUMA told the Victim Businessperson that the Victim Businessperson would need to

pay an additional fee of $150,000 to secure the release of the loan funds.

Overt Act No. 6:   On December 6 and 7, 2019, using electronic messages, defendant JUMA fraudulently induced the Victim Businessperson to wire transfer approximately $150,000, in approximately four transactions, from the Qatari Bank Account to the Kenyan Bank Account.

Overt Act No. 7:   On December 10, 2019, defendant JUMA and UICC Abbas, using electronic messages, agreed that UICC Abbas would pose in communications with the Victim Businessperson as a director of a bank that would be involved in releasing the loan funds that the Victim Businessperson expected to receive.

Overt Act No. 8:   On December 11, 2019, defendant JUMA and UICC Abbas, using electronic messages, discussed with each other what amount of the funds fraudulently obtained from the Victim Businessperson UICC Abbas would receive for his involvement in the scheme.

Overt Act No. 9:   On December 11, 2019, UICC Abbas sent electronic messages to the Victim Businessperson introducing himself as "Malik," a director at Wells Fargo.

Overt Act No. 10:   On December 16, 2019, defendant ANIFOWOSHE and UICC Abbas discussed, by phone and electronic messages, a plan for defendant ANIFOWOSHE to call the Victim Businessperson in which defendant ANIFOWOSHE, who spoke English with a less strong accent than did UICC Abbas, would pose as a bank executive from New York.

Overt Act No. 11:   On December 16, 2019, at the request of UICC Abbas, defendant ANIFOWOSHE called the Victim Businessperson, posing as a bank executive from New York.

9

1    <u>Overt Act No. 12:</u>   On December 17, 2019, acting upon the

2    request of UICC Abbas, UICC 3 filed a Fictitious Business Name

3    Statement with the Los Angeles County Registrar-Recorder/County

4    Clerk's Office in the name of the Qatari Victim Company.

5    <u>Overt Act No. 13:</u>   On December 17, 2019, UICC Abbas arranged to

6    have UICC 3 open Wells Fargo Account 1 at a Wells Fargo branch in

7    Canoga Park, California, using the name of the Qatari Victim Company

8    as the business name of the bank account.

9    <u>Overt Act No. 14:</u>   On December 19, 2019, using electronic

10   messages, UICC Abbas sent defendant VINCENT the names of the Victim

11   Businessperson, the Qatari Victim Company, and UICC 3, and a

12   photograph of the Fictitious Business Name Statement filed by UICC 3.

13   <u>Overt Act No. 15:</u>   On December 19, 2019, after defendant

14   VINCENT created and sent a false and fictitious "Durable Power of

15   Attorney" document to UICC Abbas, UICC Abbas sent the document to the

16   Victim Businessperson in an electronic message.

17   <u>Overt Act No. 16:</u>   On December 19, 2019, UICC Abbas

18   communicated with defendant AGBABIAKA about a bank account that could

19   receive funds that were to be fraudulently obtained from the Victim

20   Businessperson.

21   <u>Overt Act No. 17:</u>   On December 19, 2019, defendant AGBABIAKA

22   sent UICC Abbas electronic messages containing the account

23   information for the Capital One Account, including the account

24   number, the routing number, the bank's address, and defendant

25   AGBABIAKA's home address.

26   <u>Overt Act No. 18:</u>   On December 20, 2019, defendant JUMA and

27   UICC Abbas discussed with each other their plan to have the Victim

28

10

1  Businessperson pay an additional £250,000 to fund a purported

2  "investor's account" in the United Kingdom.

3      Overt Act No. 19:  On December 21, 2019, defendant ANIFOWOSHE

4  and UICC Abbas discussed, by phone and electronic messages, a plan

5  for defendant ANIFOWOSHE to call to the Victim Businessperson, again

6  posing as a bank executive from New York.

7      Overt Act No. 20:  On multiple dates in December 2019,

8  including December 24, 2019, UICC Abbas negotiated with a watch

9  seller for the purchase of and payment for a rose gold and titanium

10  Richard Mille RM 11-03 watch, which payment was to be directed to

11  Wells Fargo Account 2.

12      Overt Act No. 21:  On December 24, 2019, UICC Abbas sent the

13  Victim Businessperson electronic messages containing the account

14  information -- including the accountholders' names and addresses, the

15  account numbers, the routing numbers, and the SWIFT codes -- for the

16  Capital One Account and Wells Fargo Account 2, and provided

17  instructions that the Victim Businessperson should wire transfer a

18  total of $330,000 to the accounts.

19      Overt Act No. 22:  On December 26, 2019, after the Capital One

20  Account received a wire transfer of $100,000 from the Victim

21  Businessperson's Qatari Bank Account, defendant AGBABIAKA withdrew

22  approximately $7,100 from the Capital One Account to provide to an

23  illicit currency exchanger who would then transfer Nigerian Naira to

24  a Nigerian bank account specified by UICC Abbas.

25      Overt Act No. 23:  On December 26, 2019, UICC Abbas asked

26  defendant AGBABIAKA, through an electronic message, to exchange an

27  additional $20,000 using an illicit currency exchanger.

28

1    <u>Overt Act No. 24:</u>  On December 26, 2019, UICC Abbas sent

2  defendant ANIFOWOSHE electronic messages containing a photograph of a

3  wire transfer confirmation showing a $230,000 wire by the Victim

4  Businessperson to Wells Fargo Account 2; a photograph of a Richard

5  Mille RM 11-03 watch; and a screenshot of a banking application

6  displaying the balance of the Capital One Account as $100,058.31.

7    <u>Overt Act No. 25:</u>  On December 26, 2019, after UICC Abbas sent

8  an electronic message to defendant ANIFOWOSHE saying that he was

9  "[t]hinking what to buy" with the $100,000 in the Capital One

10 Account, UICC Abbas and defendant ANIFOWOSHE discussed whether UICC

11 Abbas should purchase an Audemars Piguet Skeleton watch.

12   <u>Overt Act No. 26:</u>  On December 27, 2019, defendant AGBABIAKA

13 withdrew approximately $10,000 from the Capital One Account through a

14 cashier's check, which she deposited into TD Bank Account 1.

15   <u>Overt Act No. 27:</u>  On multiple dates in December 2019,

16 including December 30, 2019, UICC Abbas and UICC 4 sent electronic

17 messages discussing the amount that UICC Abbas would pay to obtain

18 St. Christopher and Nevis ("St. Kitts") citizenship and a passport.

19   <u>Overt Act No. 28:</u>  On December 31, 2019, at the request of UICC

20 Abbas, defendant AGBABIAKA purchased a cashier's check of

21 approximately $40,000 drawn from the Capital One Account, which she

22 then mailed to an address in Georgia specified by UICC 4, to pay for

23 St. Kitts citizenship and a passport for UICC Abbas.

24   <u>Overt Act No. 29:</u>  On January 3, 2020, at UICC Abbas' request,

25 defendant AGBABIAKA picked up, from a location in New York State, the

26 rose gold and titanium Richard Mille RM 11-03 watch, which UICC Abbas

27 had purchased using the $230,000 wire by the Victim Businessperson to

28 Wells Fargo Account 2.

1    <u>Overt Act No. 30:</u>   On January 4, 2020, defendant ANIFOWOSHE and

2    UICC Abbas discussed a coconspirator whom defendant Abbas wanted to

3    transport the rose gold and titanium Richard Mille RM 11-03 watch to

4    UICC Abbas in the U.A.E.

5    <u>Overt Act No. 31:</u>   On January 4, 2020, at UICC Abbas' request,

6    defendant AGBABIAKA provided the rose gold and titanium Richard Mille

7    RM 11-03 watch to defendant FASHOLA.

8    <u>Overt Act No. 32:</u>   On January 4, 2020, defendant FASHOLA

9    provided the rose gold and titanium Richard Mille RM 11-03 watch to

10   UICC 5, to transport the watch to UICC Abbas.

11   <u>Overt Act No. 33:</u>   On January 4, 2020, UICC 5 transported the

12   rose gold and titanium Richard Mille RM 11-03 watch by airplane to

13   the U.A.E., where he hand-delivered it to UICC Abbas.

14   <u>Overt Act No. 34:</u>   On January 4, 2020, defendant VINCENT sent

15   UICC Abbas, through electronic messages, the phone number for a false

16   and fictitious "telephone banking" system, designed to induce the

17   Victim Businessperson to make additional fraudulent payments.

18   <u>Overt Act No. 35:</u>   On January 8, 2020, defendant VINCENT sent

19   UICC Abbas, through electronic messages, the phone number for a

20   different false and fictitious "telephone banking" system, which they

21   would later use to induce the Victim Businessperson to make

22   additional fraudulent payments.

23   <u>Overt Act No. 36:</u>   On January 8, 2020, defendant JUMA and UICC

24   Abbas discussed, through electronic messages, how much money they

25   would attempt to extract from the Victim Businessperson using the

26   "telephone banking" system.

27   <u>Overt Act No. 37:</u>   On January 8, 2020, defendant VINCENT

28   communicated with UICC Abbas, through electronic messages, about a

1  fake Wells Fargo banking website that he was creating with another
2  coconspirator, designed to induce the Victim Businessperson to make
3  additional fraudulent payments.

4      Overt Act No. 38:   On January 8, 2020, defendant VINCENT sent
5  UICC Abbas, through electronic messages, information about a new
6  "storyline" to induce the Victim Businessperson to make a payment of
7  $575,000.

8      Overt Act No. 39:   On January 11, 2020, defendant FASHOLA
9  discussed with UICC Abbas finding a bank account that could be used
10 to receive an additional fraudulently induced payment from the Victim
11 Businessperson.

12     Overt Act No. 40:   On January 13, 2020, after learning that
13 defendant VINCENT contacted the Victim Businessperson to tell him/her
14 that UICC Abbas was "fake," defendant JUMA and UICC Abbas discussed
15 what to do to keep defendant VINCENT from interfering in the fraud
16 scheme.

17     Overt Act No. 41:   On January 13, 2020, defendant KYARI and
18 UICC Abbas spoke about a plan to arrest defendant VINCENT.

19     Overt Act No. 42:   On January 14, 2020, defendant FASHOLA and
20 UICC Abbas communicated, through electronic messages, about a bank
21 account that UICC Abbas could use to receive funds fraudulently
22 obtained from the Victim Businessperson.

23     Overt Act No. 43:   On January 14, 2020, UICC 5 sent UICC Abbas
24 the account information for TD Bank Account 2 of UICC 6, through
25 electronic messages.

26     Overt Act No. 44:   On January 14, 2020, defendant AGBABIAKA
27 told UICC Abbas, through electronic messages, that he could use the
28 Capital One Account to receive a second wire transfer of $100,000.

14

1     <u>Overt Act No. 45:</u>  On January 14, 2020, UICC Abbas sent

2 defendant JUMA the account information for the Capital One Account

3 and TD Bank Account 2, through electronic messages.

4     <u>Overt Act No. 46:</u>  On January 16, 2020, UICC Abbas communicated

5 with defendant KYARI by electronic message and phone about arresting

6 defendant VINCENT and about paying "the team" for arresting defendant

7 VINCENT.

8     <u>Overt Act No. 47:</u>  On January 20, 2020, defendant KYARI sent

9 UICC Abbas electronic messages containing biographical information of

10 defendant VINCENT and a photograph of defendant VINCENT, and saying,

11 "We have arrested the guy . . .  He is in my Cell now [¶] This is his

12 picture after we arrested him today."

13     <u>Overt Act No. 48:</u>  On January 20, 2020, after receiving the

14 photograph of defendant VINCENT, UICC Abbas sent an electronic

15 message to defendant KYARI saying, "I want him to go through serious

16 beating of his life."

17     <u>Overt Act No. 49:</u>  On January 20, 2020, in response to

18 defendant KYARI's request for details about what defendant VINCENT

19 did "on audio," so that defendant KYARI would "know what to do," UICC

20 Abbas sent defendant KYARI an audio recording explaining how

21 defendant VINCENT had attempted to interfere in a fraud scheme and

22 steal a victim away from UICC Abbas.

23     <u>Overt Act No. 50:</u>  On January 20, 2020, UICC Abbas stated in

24 electronic messages to defendant KYARI, in regard to defendant

25 VINCENT, "Please sir I want to spend money to send this boy to jail,

26 let him go for a very long time."

27     <u>Overt Act No. 51:</u>  On January 20, 2020, UICC Abbas stated in

28 electronic messages to defendant KYARI, in regard to the arrest of

15

1  defendant VINCENT, "Let me know how I can send money to the team

2  sir[,] let them deal with him like armed robber."

3      <u>Overt Act No. 52:</u>  On January 20, 2020, defendant KYARI sent an

4  electronic message to UICC Abbas containing the account information

5  for a bank account at a Nigerian bank, Zenith Bank, in the name of a

6  person other than defendant KYARI himself, where UICC Abbas was to

7  direct payment for the arrest and imprisonment of defendant VINCENT.

8      <u>Overt Act No. 53:</u>  Between February 5 and 7, 2020, defendant

9  JUMA fraudulently induced the Victim Businessperson to send

10  approximately seven wire transfers, totaling approximately

11  $299,983.58, from the Qatari Bank Account to the Kenyan Bank Account.

12      <u>Overt Act No. 54:</u>  On February 14, 2020, after the Victim

13  Businessperson confided to UICC Abbas that s/he had lost more than

14  $1,000,000 in the fraud scheme and wrote, "I know that you think I am

15  stupid but I trusted [defendant JUMA] and now I'm going bankrupt,"

16  UICC Abbas -- pretending to be "Malik" -- responded, "Wow ☹, over

17  one million?," and falsely promised to try to help the Victim

18  Businessperson.

19      <u>Overt Act No. 55:</u>  On February 17, 2020, using electronic

20  messages, UICC Abbas provided the Victim Businessperson with the

21  account information for the Capital One Account and the TD Bank

22  Account 2, and instructed the Victim Businessperson to wire transfer

23  $100,000 and $80,000 to the accounts, respectively, to purportedly

24  facilitate payment of the $15 million loan to the Victim

25  Businessperson.

26      <u>Overt Act No. 56:</u>  On March 3, 2020, after the Victim

27  Businessperson sent UICC Abbas photographs of wire transfer

28  confirmations showing transfers of $100,000 to the Capital One

1   Account and $80,000 to TD Bank Account 2, UICC Abbas, using

2   electronic messages, sent the photograph of the wire transfer paid to

3   TD Bank Account 2 to defendant FASHOLA.

4       Overt Act No. 57:   On March 3, 2020, defendant AGBABIAKA

5   purchased a cashier's check of approximately $50,000 drawn from the

6   Capital One Account and deposited it to TD Bank Account 1.

7       Overt Act No. 58:   On March 3, 2020, defendant AGBABIAKA

8   withdrew approximately $15,000 in cash from the Capital One Account.

9       Overt Act No. 59:   On March 4, 2020, defendant AGBABIAKA sent a

10  wire transfer of approximately $50,000 from TD Bank Account 1 to a

11  bank account at Emirates NBD Bank, in the U.A.E.

12      Overt Act No. 60:   On March 5, 2020, defendant AGBABIAKA

13  withdrew approximately $10,000 in cash from the Capital One Account.

14      Overt Act No. 61:   On March 7, 2020, defendant AGBABIAKA

15  withdrew approximately $7,000 in cash from the Capital One Account.

16

17

18

19

20

21

22

23

24

25

26

27

28

1          COUNT TWO

2          [18 U.S.C. § 1956(h)]

3          17.  The Grand Jury re-alleges and incorporates here paragraphs

4   1 through 12 of the Introductory Allegations of this Indictment.

5   A.   OBJECTS OF THE CONSPIRACY

6          18.  Beginning no later than on or about November 11, 2019, and

7   continuing until on or about April 26, 2020, in Los Angeles County,

8   within the Central District of California, and elsewhere, defendants

9   ABDULRAHMAN IMRAAN JUMA, also known as ("aka") "Abdul," aka "Rahman"

10  ("JUMA"), KELLY CHIBUZO VINCENT, aka "Vincent Kelly Chibuzo"

11  ("VINCENT"), ABBA ALHAJI KYARI ("KYARI"), RUKAYAT MOTUNRAYA FASHOLA,

12  aka "Morayo" ("FASHOLA"), BOLATITO TAWAKALITU AGBABIAKA, aka

13  "Bolamide" ("AGBABIAKA"), and YUSUF ADEKINKA ANIFOWOSHE, aka "AJ,"

14  aka "Alvin Johnson" ("ANIFOWOSHE"), and unindicted coconspirator #1

15  ("UICC 1"), unindicted coconspirator Ramon Olorunwa Abbas ("UICC

16  Abbas"), unindicted coconspirator #3 ("UICC 3"), unindicted

17  coconspirator #4 ("UICC 4"), unindicted coconspirator #5 ("UICC 5"),

18  and unindicted coconspirator #6 ("UICC 6"), together with others

19  known and unknown to the Grand Jury, knowingly conspired:

20          a.   to conduct and attempt to conduct financial

21  transactions, affecting interstate and foreign commerce, knowing that

22  the property involved in the financial transactions represented the

23  proceeds of some form of unlawful activity, which, in fact, involved

24  the proceeds of specified unlawful activity -- namely, wire fraud, in

25  violation of Title 18, United States Code, Section 1343 -- and

26  knowing that the transactions were designed in whole and in part to

27  conceal and disguise the nature, location, source, ownership, and

28

18

1  control of the proceeds, in violation of Title 18, United States

2  Code, Section 1956(a)(1)(B)(i);

3        b.   to transport, transmit, and transfer, and attempt to

4  transport, transmit, and transfer, funds from a place in the United

5  States to a place outside of the United States, knowing that the

6  property involved in the financial transactions represented the

7  proceeds of some form of unlawful activity, and which property was,

8  in fact, the proceeds of specified unlawful activity -- namely, wire

9  fraud, in violation of Title 18, United States Code, Section 1343 --

10 and knowing that the transportation, transmittal, and transfer were

11 designed in whole and in part to conceal and disguise the nature,

12 location, source, ownership, and control of the proceeds, in

13 violation of Title 18, United States Code, Section 1956(a)(2)(B)(i);

14 and

15        c.   to engage and attempt to engage in monetary

16 transactions involving criminally derived property of a value greater

17 than $10,000, affecting interstate and foreign commerce, which was

18 derived from specified unlawful activity -- namely, wire fraud, in

19 violation of Title 18, United States Code, Section 1343 -- and

20 knowing that the funds represented the proceeds of some form of

21 unlawful activity, in violation of Title 18, United States Code,

22 Section 1957.

23 B.   THE MANNER AND MEANS OF THE CONSPIRACY

24      19.  The objects of the conspiracy were to be accomplished, in

25 substance, as follows:

26        a.   The Grand Jury re-alleges and incorporates here

27 paragraphs 15.a through 15.n of Section B of Count One of this

28 Indictment.

1  C.  OVERT ACTS

2       20.  In furtherance of the conspiracy, and to accomplish its

3  objects, defendants JUMA, VINCENT, KYARI, FASHOLA, AGBABIAKA, and

4  ANIFOWOSHE, and UICC 1, UICC Abbas, UICC 3, UICC 4, UICC 5, and UICC

5  6, together with others known and unknown to the Grand Jury, on or

6  about the dates set forth below, committed and caused to be committed

7  various overt acts, in the Central District of California and

8  elsewhere, including, but not limited to, the following:

9       Overt Act Nos. 1–61:  The Grand Jury re-alleges and incorporates

10 here Overt Act Number 1 through Overt Act Number 61 of Section C of

11 Count One of this Indictment.

COUNT THREE

[18 U.S.C. §§ 1028A(a)(1); 2(a)]

21.  The Grand Jury re-alleges and incorporates here paragraphs 1 through 12 of the Introductory Allegations of this Indictment.

22.  Beginning no later than on or about November 11, 2019, and continuing until on or about April 26, 2020, in Los Angeles County, within the Central District of California, and elsewhere, defendants ABDULRAHMAN IMRAAN JUMA, also known as ("aka") "Abdul," aka "Rahman," KELLY CHIBUZO VINCENT, aka "Vincent Kelly Chibuzo," ABBA ALHAJI KYARI, RUKAYAT MOTUNRAYA FASHOLA, aka "Morayo," BOLATITO TAWAKALITU AGBABIAKA, aka "Bolamide," and YUSUF ADEKINKA ANIFOWOSHE, aka "AJ," aka "Alvin Johnson," together with others known and unknown to the Grand Jury, each aiding and abetting the other, knowingly transferred, possessed, and used, without lawful authority, a means of identification that each defendant knew belonged to another person, during and in relation to a felony violation of Title 18, United States Code, Section 1349, Conspiracy to Commit Wire Fraud, as charged in Count 1.

                    FORFEITURE ALLEGATION ONE

            [18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

     1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal
Procedure, notice is hereby given that the United States of America
will seek forfeiture as part of any sentence, pursuant to Title 18,
United States Code, Section 981(a)(1)(C) and Title 28, United States
Code, Section 2461(c), in the event of any defendant's conviction of
the offense set forth in Count One of this Indictment.

     2.    Any defendant so convicted shall forfeit to the United
States of America the following:

          (a)   all right, title, and interest in any and all
property, real or personal, constituting, or derived from, any
proceeds traceable to the offenses; and

          (b)   To the extent such property is not available for
forfeiture, a sum of money equal to the total value of the property
described in subparagraph (a).

     3.    Pursuant to Title 21, United States Code, Section 853(p),
as incorporated by Title 28, United States Code, Section 2461(c), any
defendant so convicted shall forfeit substitute property, up to the
value of the property described in the preceding paragraph if, as the
result of any act or omission of said defendant, the property
described in the preceding paragraph or any portion thereof
(a) cannot be located upon the exercise of due diligence; (b) has
been transferred, sold to, or deposited with a third party; (c) has
been placed beyond the jurisdiction of the court; (d) has been
substantially diminished in value; or (e) has been commingled with
other property that cannot be divided without difficulty.

1          FORFEITURE ALLEGATION TWO

2              [18 U.S.C. § 982]

3      1.   Pursuant to Rule 32.2(a) of the Federal Rules of Criminal

4  Procedure, notice is hereby given that the United States will seek

5  forfeiture as part of any sentence, pursuant to Title 18, United

6  States Code, Section 982(a)(1), in the event of any defendant's

7  conviction of the offenses set forth in Count Two of this Indictment.

8      2.   Any defendant so convicted shall forfeit to the United

9  States of America the following:

10          (a)  Any property, real or personal, involved in such

11  offense, and any property traceable to such property; and

12          (b)  To the extent such property is not available for

13  forfeiture, a sum of money equal to the total value of the property

14  described in subparagraph (a).

15      3.   Pursuant to Title 21, United States Code, Section 853(p),

16  as incorporated by Title 18, United States Code, Section 982(b)(1),

17  and Title 18, United States Code, Section 982(b)(2), any defendant so

18  convicted shall forfeit substitute property, if, by any act or

19  omission of said defendant, the property described in the preceding

20  paragraph, or any portion thereof: (a) cannot be located upon the

21  exercise of due diligence; (b) has been transferred, sold to, or

22  deposited with a third party; (c) has been placed beyond the

23  jurisdiction of the court; (d) has been substantially diminished in

24  value; or (e) has been commingled with other property that cannot be

25  divided without difficulty.  Substitution of assets shall not be

26  ordered, however, where the convicted defendant acted merely as an

27  intermediary who handled but did not retain the property in the

28  course of the money laundering offense unless the defendant, in

23

committing the offense or offenses giving rise to the forfeiture, conducted three or more separate transactions involving a total of $100,000.00 or more in any twelve-month period.

FORFEITURE ALLEGATION THREE

[18 U.S.C. §§ 982 and 1028]

1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Sections 982 and 1028, in the event of any defendant's conviction of the offense set forth in Count Three of this Indictment.

2.    Any defendant so convicted shall forfeit to the United States of America the following:

(a) All right, title and interest in any and all property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the offense;

(b)  Any personal property used or intended to be used to commit the offense; and

(c)  To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a) and (b).

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Sections 982(b) and 1028(g), any defendant so convicted shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has

1  been commingled with other property that cannot be divided without

2  difficulty.

3                                          A TRUE BILL

4

5                              _____/S/_____
                                   Foreperson

6

7  TRACY L. WILKISON
   Acting United States Attorney

8

9

10 CHRISTOPHER D. GRIGG
   Assistant United States Attorney
11 Chief, National Security Division

12 CAMERON L. SCHROEDER
   Assistant United States Attorney
13 Chief, Cyber & Intellectual
       Property Crimes Section

14
   ANIL J. ANTONY
15 Assistant United States Attorney
   Deputy Chief, Cyber &
16     Intellectual Property Crimes
       Section

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA,<br><br>                    PLAINTIFF,<br><br>v.<br><br>YUSUF ADEKINKA ANIFOWOSHE,<br><br>                    DEFENDANT(S) | CASE NUMBER:<br><br>2:21-cr-00203-RGK    6<br><br><br>**WARRANT FOR ARREST** |
|---|---|

To:    UNITED STATES MARSHAL AND ANY AUTHORIZED UNITED STATES OFFICER

**YOU ARE HEREBY COMMANDED** to arrest **Yusuf Adekinka Anifowoshe, aka "AJ," aka "Alvin Johnson,"** and bring him forthwith to the nearest Magistrate Judge to answer an Indictment charging him with Conspiracy to Commit Wire Fraud, in violation of Title 18, United States Code, Section 1349; Conspiracy to Engage in Money Laundering, in violation of Title 18, United States Code, Section 1956(h); and Aggravated Identity Theft, in violation of Title 18, United States Code, Section 1028A(a)(1).

Kiry K. Gray
NAME OF ISSUING OFFICER

Clerk of Court
TITLE OF ISSUING OFFICER

JOHANIE BANEGAS
SIGNATURE OF DEPUTY CLERK

April 29, 2021              Los Angeles, CA
DATE AND LOCATION OF ISSUANCE

By:    STEVE KIM
NAME OF JUDICIAL OFFICER

RETURN

THIS WARRANT WAS RECEIVED AND EXECUTED WITH THE ARREST OF THE ABOVE-NAMED DEFENDANT AT (LOCATION)

DATE RECEIVED

DATE OF ARREST

**DESCRIPTIVE INFORMATION FOR DEFENDANT CONTAINED ON PAGE TWO**

NAME OF ARRESTING OFFICER

TITLE

SIGNATURE OF ARRESTING OFFICER

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NUMBER: |
|---|---|
| PLAINTIFF, | 2:21-cr-00203-RGK        6 |
| v. | |
| YUSUF ADEKINKA ANIFOWOSHE, | **WARRANT FOR ARREST** |
| DEFENDANT(S) | |

## ADDITIONAL DEFENDANT INFORMATION

| RACE: Black | SEX: Male | HEIGHT: | WEIGHT: | HAIR: Black | EYES: Brown | OTHER: |
|---|---|---|---|---|---|---|

| YEAR OF BIRTH: **1994** | PLACE OF BIRTH: | SOCIAL SECURITY NO.: 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 | DRIVER'S LICENSE NO. 387300967 (Note: Suspended and expired) | ISSUING STATE: NY |
|---|---|---|---|---|

| ALIASES: | SCARS, TATTOOS OR OTHER DISTINGUISHING MARKS: |
|---|---|

| AUTO YEAR: | AUTO MAKE: | AUTO MODEL: | AUTO COLOR: | AUTO LICENSE NO.: | ISSUING STATE |
|---|---|---|---|---|---|

| LAST KNOWN RESIDENCE: 2480 Brigham St., Brooklyn, NY 11235 | LAST KNOWN EMPLOYMENT: |
|---|---|

FBI NUMBER:

ADDITIONAL INFORMATION:

    US Passport: 654648951

| INVESTIGATIVE AGENCY NAME: **FBI** | INVESTIGATIVE AGENCY ADDRESS: |
|---|---|

NOTES:

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA,<br><br>PLAINTIFF,<br><br>v.<br><br>RUKAYAT MOTUNRAYA FASHOLA,<br><br>DEFENDANT(S) | CASE NUMBER:<br><br>2:21-cr-00203-RGK     4 |
|---|---|
| | **WARRANT FOR ARREST** |

To:    UNITED STATES MARSHAL AND ANY AUTHORIZED UNITED STATES OFFICER

**YOU ARE HEREBY COMMANDED** to arrest **Rukayat Motunraya Fashola, aka "Morayo,"** and bring her forthwith to the nearest Magistrate Judge to answer an Indictment charging her with Conspiracy to Commit Wire Fraud, in violation of Title 18, United States Code, Section 1349; Conspiracy to Engage in Money Laundering, in violation of Title 18, United States Code, Section 1956(h); and Aggravated Identity Theft, in violation of Title 18, United States Code, Section 1028A(a)(1).

Kiry K. Gray
NAME OF ISSUING OFFICER

Clerk of Court
TITLE OF ISSUING OFFICER

JOHANIE BANEGAS
SIGNATURE OF DEPUTY CLER

April 29, 2021      Los Angeles, CA
DATE AND LOCATION OF ISSUANCE

By:  STEVE KIM
NAME OF JUDICIAL OFFICER

**RETURN**

THIS WARRANT WAS RECEIVED AND EXECUTED WITH THE ARREST OF THE ABOVE-NAMED DEFENDANT AT (LOCATION)

DATE RECEIVED

NAME OF ARRESTING OFFICER

DATE OF ARREST

TITLE

**DESCRIPTIVE INFORMATION FOR DEFENDANT
CONTAINED ON PAGE TWO**

SIGNATURE OF ARRESTING OFFICER

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>PLAINTIFF,<br><br>v.<br><br>RUKAYAT MOTUNRAYA FASHOLA,<br><br>DEFENDANT(S) | CASE NUMBER:<br><br>2:21-cr-00203-RGK     4<br><br><br>**WARRANT FOR ARREST** |

## ADDITIONAL DEFENDANT INFORMATION

| RACE: Black | SEX: Female | HEIGHT: | WEIGHT: | HAIR: Black | EYES: Brown | OTHER: |
|---|---|---|---|---|---|---|

| YEAR OF BIRTH: **1992** | PLACE OF BIRTH: | SOCIAL SECURITY NO.: 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 | DRIVER'S LICENSE NO. 782873300 | ISSUING STATE: NY |
|---|---|---|---|---|

ALIASES:     SCARS, TATTOOS OR OTHER DISTINGUISHING MARKS:

| AUTO YEAR: | AUTO MAKE: | AUTO MODEL: | AUTO COLOR: | AUTO LICENSE NO.: | ISSUING STATE |
|---|---|---|---|---|---|

LAST KNOWN RESIDENCE:

2501 Nostrand Ave., Apt 5D, Brooklyn, NY 11210

LAST KNOWN EMPLOYMENT:

FBI NUMBER:

ADDITIONAL INFORMATION:

INVESTIGATIVE AGENCY NAME: **FBI**

INVESTIGATIVE AGENCY ADDRESS:

NOTES:

**United States District Court, Eastern District of New York**

| UNITED STATES OF AMERICA | ORDER SETTING CONDITIONS OF RELEASE |
|---|---|
| **V.** | **AND APPEARANCE BOND** |

Rukayat M. Fashola _____, Defendant.

Case Number: 21mj849

## RELEASE ORDER

It is hereby ORDERED that the above-named defendant be released subject to the Standard Conditions of Release on the reverse and as follows:

☐ Upon **Personal Recognizance Bond** on his/her promise to appear at all scheduled proceedings as required, or

☑ Upon **Bond** executed by the defendant in the amount of $ 150,000_____, and secured by ☐ financially responsible sureties listed below and/or ☐ collateral set forth below.

### Additional Conditions of Release

The Court finding that release under the Standard Conditions of Release on the reverse will not by themselves reasonably assure the appearance of the defendant and or the safety of other persons and the community, IT IS FURTHER ORDERED as follows:

☑ 1. The defendant must remain in and may not leave the following areas without Court permission: ☑ New York City; ☑ Long Island, NY; ☐ New York State; ☐ New Jersey; ☑ CDCA _____ and travel to and from this Court and the permitted areas.

☑ 2. The defendant must avoid all contact with the following persons or entities: victims,witness. co-conspirators except in presence of counsel (but may have contact with Ramon Abbas as long as not discuss case) .

☐ 3. The defendant must avoid and not go to any of the following locations: _____

☑ 4. The defendant must surrender all passports to Pretrial Services by XXX and not obtain other passports or international travel documents.

☑ 5. The defendant is placed under the supervision of the Pretrial Services Agency subject to the Special Conditions on the reverse and:

  ☑ a. is subject to random visits by a Pretrial Services officer at defendant's residence and/or place of work;

  ☑ b. must report ☐ as directed by Pretrial Services or ☐ in person ____ times per ____ and/or ☐ by telephone ____ times per ___ .

  ☐ c. must undergo ☐ testing, ☐ evaluation and/or ☐ treatment for substance abuse, including alcoholism, as directed by Pretrial Services.

  ☐ d. must undergo evaluation and treatment for mental health problems, as directed by Pretrial Services.

  ☐ e. is subject to the following location restriction program with location monitoring, as directed by Pretrial Services:

    ☐ home incarceration: restricted to home at all times, except for attorney visits, court appearances and necessary medical treatment;

    ☐ home detention: restricted to home at all times, except for attorney visits, court appearances, medical treatment, ☐ religious services, ☐ employment, ☐ school or training, ☐ other activities approved by Pretrial Services, ☐ _____

  ☐ curfew: restricted to home every day from _____ to _____ , or ☐ as directed by Pretrial Services.

  ☐ Defendant must pay all or part of the cost of any required testing, evaluation, treatment and/or location monitoring with personal funds, based upon ability to pay as determined by the Court and the Pretrial Services Agency, and/ or from available insurance.

☑ 6. Other Conditions: Not apply for lines of credit or bank account using any name,unless approved by PTS. No false ID documer

## APPEARANCE BOND

I, the undersigned defendant, and each surety who signs this bond, acknowledge that I have read this Appearance Bond and, and have either read all the other conditions of release or have had those conditions explained. I further acknowledge that I and my personal representatives, jointly and severally, are bound to pay the United States of America the sum of $ 150,000_____ and that this obligation is secured with the below interest in the following property ("Collateral") which I represent is/are free and clear of liens except as otherwise indicated:

☐ cash deposited in the Registry of the Court in the sum of $ _____ ____;

☐ premises located at: _____ owned by_____ _____ ___;

☐ I also agree to execute a confession of judgment, mortgage or lien in form approved by the U.S. Attorney which shall be duly filed with the proper local and state authorities on or before _____

Each owner of the above Collateral agrees not to sell the property, allow further claims or encumbrances to be made against it, or do anything to reduce its value while this Appearance Bond is in effect.

*Forfeiture of the Bond.* This Appearance Bond may be forfeited if the defendant fails to comply with any of the conditions set forth above and on the reverse. The defendant and any surety who has signed this form also agree that the court may immediately order the amount of the bond surrendered to the United States, including any security for the bond, if the defendant fails to comply with the above agreement. The court may also order a judgment of forfeiture against the defendant and against each surety for the entire amount of the bond, including any interest and costs.

Date

| s/ Sidikat Fashola | Address: 48 Irving Street Valley Stream , NY 11580 | 7/22/21 |
|---|---|---|
| by MJ Kuo on consent , Surety | | |
| s/ Ayanatu Ajose | Address: 48 Irving Street Valley Stream , NY 11580 | 7/22/21 |
| by MJ Kuo on consent , Surety | | |
| _____ , Surety | Address: _____ | _____ |

I acknowledge that I am the defendant in this case and that I am aware of the conditions of release and of the penalties and sanctions set forth on the front and reverse sides of this form.

/s/ Rukayat Motunraya Fashola (by MJ Kuo on consent)
Signature of Defendant

Release of the Defendant is hereby ordered on July 22 20 21 .

_____ , US MJ

Distribution: Canary - Court   Pink   Pretrial Services   Goldenrod   Defendant

## STANDARD CONDITIONS OF RELEASE

IT IS ORDERED that the defendant's release is subject to these conditions:

(1) The defendant must not violate any federal, state or local law while on release.

(2) The defendant must cooperate in the collection of a DNA sample if the collection is authorized by 42 U.S.C. § 14135a.

(3) The defendant must advise the Court, the Pretrial Services office, defense Counsel and the U.S. Attorney in writing before making any change in address or telephone number.

(4) The defendant must appear in court as required and must surrender for service of any sentence imposed as directed.

(5) The defendant must refrain from use or unlawful possession of a narcotic drug or other controlled substances as defined in 21 U.S.C. § 802, unless prescribed by a licensed medical practitioner.

(6) If the defendant fails to report as required to the Pretrial Services Agency, defendant may be subject to such random visits at his/her residence or work by a Pretrial Services Officer as may be necessary to verify his/her residence or place of employment in order to secure compliance with the order of release.

(7) The defendant must not possess a firearm, destructive device, or other weapon.

## SPECIAL CONDITIONS OF RELEASE FOR TESTING, TREATMENT OR EVALUATION AND FOR LOCATION MONITORING

1. If the defendant fails to appear for any specified treatment or evaluation, defendant may be subject to such random visits at his/her residence or work by a Pretrial Services Officer as may be necessary to verify his/her residence or place of employment in order to secure compliance with the order of release.

2. The defendant must not obstruct, attempt to obstruct, or tamper with the efficiency and accuracy of prohibited substance screening or testing. Testing may be used with random frequency and may include urine testing, the wearing of a sweat patch, a remote alcohol testing system, and/or any form of prohibited substance screening or testing, as determined by Pretrial Services.

3. If defendant is subject to a location restriction program or location monitoring, defendant must:

   (a) stay at his/her residence at all times except for approved activities and may not leave for approved activities without providing prior notice to Pretrial Services, except in cases of medical emergencies.

   (b) abide by all program requirements and instructions provided by Pretrial Services relating to the operation of monitoring technology. Unless specifically ordered by the court, Pretrial Services may require use of one of the following or comparable monitoring technology: Radio Frequency (RF) monitoring; Passive Global Positioning Satellite (GPS) monitoring; Active Global Positioning Satellite (GPS) monitoring (including "hybrid" (Active/Passive) GPS); Voice Recognition monitoring.

## FORFEITURE OF THE BOND

This appearance bond may be forfeited if the defendant does not comply with the conditions of release set forth in this Order Setting Conditions of Release and Bond. The court may immediately order the amount of the bond and any Collateral surrendered to the United States if the defendant does not comply with the agreement. At the request of the United States, the court may order a judgment of forfeiture against the defendant and each surety for the entire amount of the bond, including interest and costs.

## RELEASE OF THE BOND

This appearance bond may be terminated at any time by the Court. This bond will be satisfied and the security will be released when either: (1) the defendant is found not guilty on all charges, or (2) the defendant reports to serve a sentence.

## ADVICE OF PENALTIES AND SANCTIONS TO THE DEFENDANT

Defendant is advised that violating any of the foregoing conditions of release may result in the immediate issuance of a warrant of arrest, a revocation of the order of release, an order of detention, a forfeiture of any bond, and a prosecution for contempt of court and could result in imprisonment, a fine, or both.

While on release, if defendant commits a federal felony offense the punishment is an additional prison term of not more than ten years and for a federal misdemeanor offense the punishment is an additional prison term of not more than one year. This sentence will be consecutive (*i.e.*, in addition to) to any other sentence defendant may receive.

It is a crime punishable by up to ten years in prison, and a $250,000 fine, or both, to: obstruct a criminal investigation; tamper with a witness, victim, or informant; retaliate or attempt to retaliate against a witness, victim, or informant; or intimidate or attempt to intimidate a witness, victim, juror, informant, or officer of the court. The penalties for tampering, retaliation, or intimidation are significantly more serious if they involve a killing or attempted killing.

If, after release, defendant knowingly fails to appear as the conditions of release require, or to surrender to serve a sentence, defendant may be prosecuted for failing to appear or surrender and additional punishment may be imposed, whether or not the defendant is convicted of the pending charges. If defendant is convicted of:

(1) an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more – defendant will be fined not more than $250,000 or imprisoned for not more than 10 years, or both;

(2) an offense punishable by imprisonment for a term of five years or more, but less than fifteen years – defendant will be fined not more than $250,000 or imprisoned for not more than five years, or both;

(3) any other felony – defendant will be fined not more than $250,000 or imprisoned not more than two years, or both;

(4) a misdemeanor – defendant will be fined not more than $100,000 or imprisoned not more than one year, or both.

A term of imprisonment imposed for failure to appear or surrender will be consecutive to any other sentence imposed. In addition, a failure to appear or surrender may result in the forfeiture of any bond posted.

Distribution:   Canary - Court    Pink - Pretrial Services    Goldenrod - Defendant